# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> MES INTERNATIONAL, INC.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 09-14109 |
| In re: <br><br> GSI GROUP INC., <br><br> Debtor. | Chapter 11 <br><br> Case No. 09-14110 |
| In re: <br><br> GSI GROUP CORPORATION, <br><br> Debtor. | Chapter 11 <br><br> Case No. 09-14111 <br><br> Joint Administration Requested |

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BROWN RUDNICK LLP AS COUNSEL FOR THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submit this application (this "Application") for an order authorizing the employment and retention of Brown Rudnick LLP ("Brown Rudnick") as counsel for the Debtors, effective as of the Petition Date (as defined below). In support of this Application, the Debtors submit the Affidavit of William R. Baldiga, sworn to on November 18, 2009 and attached hereto as Exhibit A (the "Baldiga Affidavit"), and respectfully represent and set forth as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: MES International, Inc. (1964); GSI Group Inc. (0412); and GSI Group Corporation (9358). The Debtors' headquarters is located at 125 Middlesex Turnpike, Bedford, MA 01730.

## Background

### A. Company Overview

1. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of the Chapter 11 Cases.

2. As more particularly described in the Declaration of Sergio Edelstein, the Debtors' President and Chief Executive Officer (the "Edelstein Declaration") (also filed in the Chapter 11 Cases on the Petition Date), the Debtors in these cases are comprised of three entities within a corporate family led by parent company GSI Group Inc. ("Holdings"). The Debtors consist of Holdings, its wholly owned subsidiary GSI Group Corporation ("GSI"), and MES International, Inc. ("MES"), itself an indirect wholly owned subsidiary of GSI. Holdings has ten other U.S. and nineteen foreign subsidiaries and one joint venture which have not filed for chapter 11 protection and are not debtors in the Chapter 11 Cases.

3. Holdings, together with its debtor and non-debtor subsidiaries (collectively, the "Company") designs, develops, manufactures and sells photonics-based solutions (consisting of lasers, laser systems and electro-optical components), precision motion devices, associated precision motion control technology and systems. The Company's customers incorporate its technology into their products or manufacturing processes for a wide range of applications across

multiple markets, including: industrial, scientific, electronics, semiconductor, medical and aerospace. The Company's products enable customers to implement advanced manufacturing processes, to make advances in materials and processing technology, and to meet extremely precise manufacturing specifications, including device complexity and miniaturization.

4. The Company, headquartered in Bedford, Massachusetts, sells worldwide with a direct sales force and through distributors and sales agents. The Company has manufacturing, research and development sites in several states in North America, as well as in the United Kingdom, China and Germany. Additional sales, service and applications sites are located in multiple locations throughout Asia and around the world. The Company employs approximately 1,300 full and part-time employees.

5. In August 2008, the Company acquired Excel Technology, Inc. ("Excel"), a designer, manufacturer and marketer of photonics-based solutions. Prior to the acquisition, Excel, which is not a debtor in the Chapter 11 Cases, was headquartered in East Setauket, New York. Excel manufactures its products in plants located in the United States and Germany, and sells its products to customers worldwide, both directly and indirectly through resellers and distributors.

B. **Prepetition Financing**

6. The Debtors have no material secured debt. In August 2008, in order to finance a portion of the Excel acquisition, GSI issued and sold to various investors $210.0 million of unsecured senior notes at a fixed interest rate of 11% per annum due 2013 (the "Senior Notes"), which are guaranteed by Holdings and certain of Holdings' U.S. subsidiaries.

C.  **Events Leading to the Commencement of the Chapter 11 Cases**

7.  As detailed in the Edelstein Declaration, delays in the integration of the financial accounting systems of Holdings and Excel immediately following the acquisition of Excel in 2008 initially led to a delay of several weeks in the preparation of Holdings' Quarterly Report on Form 10-Q for the quarterly period ended September 26, 2008 (the "2008 Q3 Report"). Shortly thereafter and prior to filing the 2008 Q3 Report, on December 4, 2008, Holdings announced that it had identified potential errors in the recognition of revenue related to sales to a customer in the first and second fiscal quarters of 2008 in Holdings' Semiconductor Systems Segment, which were brought to the attention of the Audit Committee of Holdings' Board of Directors (the "Audit Committee") by Holdings' management. Following an initial review, the Audit Committee, in consultation with Holdings' outside legal counsel and its independent auditors, Ernst & Young, determined that it was appropriate to undertake an independent review of the potential revenue recognition issues brought to its attention. In connection therewith, the Audit Committee subsequently voluntarily expanded its review of sales transactions in the Company's Semiconductor Systems Segment, along with other sales transactions that contained arrangements with multiple deliverables for fiscal years 2006, 2007 and 2008. Between December 4, 2008 and March 30, 2009, Holdings announced that it had identified errors relating to the timing of revenue recognition relating to certain sales to customers in the Semiconductor Systems Segment during fiscal years 2006, 2007 and 2008 and that, as a result, the previously issued interim and annual financial statements for these years should not be relied upon.

8.  In December of 2008, certain holders of the Senior Notes alleged that Holdings had failed to comply with the covenant in Section 4.02 of the indenture for the Senior Notes (the "Indenture") as a result of Holdings' failure to timely file its 2008 Q3 Report with the U.S.

Securities and Exchange Commission. These holders further alleged that, if such failure continued for 60 days from the date that Holdings received notices of failure from Holders comprising at least 25% of the aggregate amount of Senior Notes then outstanding, then such failure would constitute an event of default.

9. As a result of these events, Holdings began engaging in ongoing discussions with certain holders of the Senior Notes. On February 11, 2009, Holdings announced that it entered into a forbearance agreement with certain entities holding greater than 75% of the outstanding aggregate principal amount of the Senior Notes (the "Senior Noteholders"). Thereafter, the Company continued to engage in negotiations that ultimately led in June 2009 to an agreement on a non-binding term sheet with the Senior Noteholders to consensually restructure the Company's outstanding obligations under the Senior Notes. Since that time, Holdings has conducted an extensive process to identify possible alternatives to the transactions described in the Plan (as hereinafter defined), and has concluded that the transactions described in the Plan provide the highest and best treatment for all creditors of the Debtors' estates, Holdings' shareholders and the Company's customers, vendors and employees.

10. On November 19, 2009, the Debtors and the Senior Noteholders entered into a Plan Support Agreement. Pursuant to the Plan Support Agreement, holders of 88.1% of the outstanding principal amount of the Senior Notes have agreed to support the Joint Chapter 11 Plan of Reorganization for MES International, Inc., GSI Group Inc. and GSI Group Corporation (the "Plan") which was filed in the Chapter 11 Cases on the Petition Date, to the extent the Debtors continue to comply with the terms and conditions of the Plan Support Agreement. Pursuant to the Plan, the Senior Notes, together with an additional unsecured note payable by GSI to a foreign subsidiary of Holdings (the "GSI UK Note"), will be converted to (a) a payment

in cash for certain accrued and unpaid interest (at the non-default rate), fees, expenses (including, without limitation, all amounts payable to the trustee under the Indenture) and all other amounts (other than principal) due to the extent such amounts are unpaid as of the Effective Date; (b) new common shares equal to 81.4% of the outstanding capital stock of reorganized Holdings[2]; and (c) new secured notes in the approximate amount of $104,100,000[3], resulting in the reduction of the Debtors' funded indebtedness by more than $125,000,000 and leaving the Debtors' remaining debt, including all vendor payables and all or substantially all other claims, unimpaired under the Plan. The Debtors filed the Chapter 11 Cases to implement the Plan.

11.   The Debtors have met their obligations as they have come due. The Debtors have had sufficient cash from operations to meet their obligations arising prior to their filing of the Plan and believe that they will continue to have sufficient cash to readily pay when due all ordinary course obligations arising after the commencement of the Chapter 11 Cases.

12.   The Debtors are making every effort to commence and implement these cases with as little disruption as possible to their highly valued customers, employees and vendors. Additional information regarding the Debtors and the Company, and the background to the Debtors' bankruptcy filing, is set forth in the Edelstein Declaration filed contemporaneously herewith and incorporated by reference herein.

---

[2] Specifically, the holders of Senior Notes will receive approximately 74.3% of the outstanding capital stock of reorganized Holdings, and the holder of the GSI UK Note will receive approximately 7.1% of the outstanding capital stock of reorganized Holdings.

[3] Specifically, holders of the Senior Notes will receive new secured notes in the approximate aggregate amount of $95 million, and the holder of the GSI UK Note will receive new secured notes in the approximate aggregate amount of $9.1 million.

## Jurisdiction

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules").

## Relief Requested

14. By this Application, the Debtors seek to employ and retain the law firm of Brown Rudnick, effective as of the Petition Date, to represent the Debtors as their co-counsel in connection with the filing of their chapter 11 petitions and the prosecution of these Chapter 11 Cases. Accordingly, the Debtors respectfully request that this Court enter an order authorizing the Debtors to employ and retain Brown Rudnick under a general retainer as their attorneys to perform the legal services that will be necessary during these Chapter 11 Cases.

## Basis For Relief

15. The Debtors have selected, and seek to retain herein, the firm of Brown Rudnick as their bankruptcy co-counsel owing to, among other things: (i) Brown Rudnick's extensive experience and knowledge in the fields of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code; and (ii) Brown Rudnick's familiarity with the Debtors' business and affairs and potential legal issues in the context of these Chapter 11 Cases. Brown Rudnick has represented debtors, official and unofficial committees and other prominent parties in many chapter 11 cases in this District and others, as more fully described in the Baldiga Affidavit.

16. Prior to the Petition Date, commencing on March 24, 2009, the Debtors engaged Brown Rudnick to provide advice in connection with potential debt restructuring alternatives and negotiations with the Senior Noteholders and related matters, and later as to the preparation for filing these Chapter 11 Cases. Accordingly, Brown Rudnick has developed significant experience and expertise regarding the Debtors which will allow the effective and efficient provision of legal services in these Chapter 11 Cases.

### Services to Be Rendered

17. Brown Rudnick will render, among others, the following services to the Debtors, as requested by the Debtors:

   (i) provision of legal advice with respect to the Debtors' rights and duties as debtors in possession in the continued operation of their business and management of their properties;

   (ii) preparation on behalf of the Debtors of all necessary petitions, applications, motions, objections, responses, answers, orders, reports and other legal papers;

   (iii) pursuit of confirmation of the Plan (or, if necessary, an alternative plan of reorganization) and approval of the corresponding solicitation procedures and disclosure statement;

   (iv) attendance at any meetings and negotiations with representatives of creditors, equity holders or prospective investors or acquirers and other parties-in-interest in connection with the above matters;

   (v) provision of general corporate, capital markets, mergers and acquisitions, employment, tax and litigation advice and other general non-bankruptcy legal services to the Debtors (as may be requested by the Debtors);

   (vi) appearance before this Court, any appellate courts and the U.S. Trustee to protect the interests of the Debtors; and

   (vii) performance of all other legal services for the Debtors that are necessary and proper in these proceedings.

18. The Debtors understand that Brown Rudnick intends to work closely with other professionals retained by the Debtors to ensure that there is no unnecessary duplication of services performed for or charged to the Debtors' estates.

### Disinterestedness

19. To the best of the Debtors' knowledge, except as otherwise set forth in the Baldiga Affidavit, neither Brown Rudnick nor any partner, counsel or associate of Brown Rudnick: (i) represents entities other than the Debtors in connection with these Chapter 11 Cases; (ii) has any connections with the Debtors, their creditors or stockholders or any other party-in-interest; or (iii) holds any interest adverse to the Debtors or their estates with respect to the matters on which Brown Rudnick is to be retained and employed in these Chapter 11 Cases.

20. In addition, as set forth in the Baldiga Affidavit, Brown Rudnick, its partners, counsel and associates:

> (i) are not creditors, equity security holders or insiders of the Debtors;
>
> (ii) are not and were not, within two years before the date of the filing of the Debtors' chapter 11 petitions, directors, officers or employees of the Debtors; and
>
> (iii) do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason.

Accordingly, the Debtors believe that Brown Rudnick is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) thereof.

21. Brown Rudnick is conducting a continuing inquiry into any matters that would affect its disinterested status. In the event additional disclosure is necessary, Brown Rudnick

promptly will file a supplemental affidavit with this Court setting forth any facts and circumstances relevant thereto.

22. To the extent that issues arise that would cause the Debtors to be adverse to any of Brown Rudnick's clients such that it would not be appropriate for Brown Rudnick to represent the Debtors with respect to such matters, the Debtors will request that their local bankruptcy co-counsel, Saul Ewing LLP, represent the Debtors with respect to those matters.

### Professional Compensation

23. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Brown Rudnick on any reasonable terms and conditions. The Debtors submit that the most reasonable terms and conditions are those charged by Brown Rudnick to the Debtors and other clients on an hourly basis in a competitive market for legal services. Therefore, the Debtors and Brown Rudnick have agreed that, subject to this Court's approval, for all services performed and expenses incurred after the Petition Date, Brown Rudnick shall be paid its customary hourly rates for services that are in effect from time to time, as charged to bankruptcy and non-bankruptcy clients, and shall be reimbursed according to Brown Rudnick's customary reimbursement policies and in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the Local Rules and applicable guidelines established by the U.S. Trustee (the "U.S. Trustee Guidelines"). In addition, the Debtors wish to retain Brown Rudnick under a general retainer because of the extensive legal services that may be required and the fact that the nature and extent of such services are not known at this time.

24. In compliance with the U.S. Trustee Guidelines, Brown Rudnick categorizes its billings by subject matter. As of the Petition Date, Brown Rudnick's rates, which are adjusted from time to time, range from $615 to $980 per hour for partners, $335 to $650 per hour for

counsel and specialists, $325 to $595 per hour for associates and $100 to $295 per hour for paraprofessionals. Brown Rudnick customarily is reimbursed for all expenses it incurs in connection with its representation of a client in a given matter. Such expenses include, without limitation, travel costs, telecommunications, express mail, messenger service, photocopying costs, document processing, temporary employment of additional staff, overtime meals, Lexis and Westlaw expenses, court fees, transcript costs and, in general, all identifiable expenses that would not have been incurred but for the representation of a particular client.

25. Brown Rudnick is not a creditor of the Debtors. In the one year prior to the Petition Date, the Debtors paid $1,517,817.70 to Brown Rudnick on account of services performed and expenses incurred in connection with its advice to the Debtors and the preparation for the commencement and prosecution of these Chapter 11 Cases. In addition, Brown Rudnick received an advance retainer of $200,000 for professional services to be performed and expenses to be incurred in connection with these chapter 11 cases, which includes an advance of estimated fees and expenses from November 17, 2009 through November 19, 2009. The exact amount of actual charges for fees and expenses for such period will be determined upon the final recording of all time and expense charges and debited against such advance. After application of amounts for payment of any additional prepetition professional services and related expenses, the excess advance amounts will be held by Brown Rudnick for application toward and payment of postpetition fees and expenses allowed by this Court.

26. Brown Rudnick has acknowledged that all amounts paid to Brown Rudnick during these Chapter 11 Cases are subject to final allowance by this Court. In the event that any fees or expenses paid to Brown Rudnick during these Chapter 11 Cases are disallowed by this

Court, the fees and expenses will be disgorged by Brown Rudnick and returned to the Debtors or be treated as otherwise ordered by this Court.

27. The Debtors understand that no agreement exists, and that no agreement will be made, for Brown Rudnick to share with any other person or firm any compensation that Brown Rudnick receives for its services to the Debtors.

## Bests Interests of the Estate

28. Brown Rudnick's attorneys are highly experienced and skilled in the fields of bankruptcy and reorganization and have developed a familiarity with the Debtors' business, operations and finances. The Debtors believe that Brown Rudnick's expertise in the areas described above and in the Baldiga Affidavit is essential to the Debtors' reorganization efforts. Accordingly, based on the foregoing facts and authorities, the Debtors submit that the relief requested herein should be granted.

## Notice

29. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) those creditors listed on the Debtors' Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the U.S. Securities and Exchange Commission; (vi) counsel to the Senior Noteholders; and (vii) the Indenture Trustee on behalf of the holders of the Senior Notes and its counsel.

## No Prior Request

30. The Debtors have not previously sought the relief requested herein from this or any other court.

**WHEREFORE** the Debtors respectfully request that this Court enter an order in the form attached hereto as Exhibit B authorizing the Debtors to employ and retain Brown Rudnick as counsel for the Debtors and granting such other and further relief as is just and proper.

Dated: November 20, 2009

GSI GROUP INC., on behalf of itself and its affiliated Debtors and Debtors in Possession

*S. Edelstein*

Name: Sergio Edelstein
Title: President and Chief Executive Officer

# 1707035