UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re                                                    :    Chapter 11
                                                         :
                                                         :    Case No. 09-14109 (PJW)
MES INTERNATIONAL, INC., et al.,[1]                      :
                                                         :    (Jointly Administered)
        Debtors.                                         :
                                                         :    Re: Docket Nos. 24, 78
---------------------------------------------------------x

## OBJECTION OF COMMITTEE OF EQUITY SECURITY HOLDERS TO MOTION OF DEBTORS FOR ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) ESTABLISHING VOTING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; (III) APPROVING FORM OF BALLOT; AND (IV) ESTABLISHING SOLICITATION AND TABULATION PROCEDURES [DOCKET NO. 78]

The Official Committee of Equity Security Holders (the "Equity Committee") hereby objects, pursuant to sections 105 and 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Motion of Debtors for Order (i) Approving Disclosure Statement; (ii) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation of Plan; (iii) Approving Form of Ballot; and (iv) Establishing Solicitation and Tabulation Procedures (Docket No. 78) (the "Motion") filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases. By the Motion, the Debtors are seeking, among other things, (i) approval of the Disclosure Statement Relating to Joint Chapter 11 Plan of Reorganization for MES International, Inc., GSI Group Inc. and GSI Group Corporation filed on November 20, 2009 (Docket No. 24) (the "Disclosure Statement"),

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: MES International, Inc. (1964); GSI Group Inc. (0412); and GSI Group Corporation (9358). The Debtors' headquarters is located at 125 Middlesex Turnpike, Bedford, MA 01730.

(ii) scheduling of a hearing (the "Confirmation Hearing") to consider confirmation of the Joint Chapter 11 Plan of Reorganization for MES International, Inc., GSI Group Inc. and GSI Group Corporation (Docket No. 23) (the "Plan") on February 18, 2010 and (iii) authority to mail the Solicitation Packages[2] on or before January 11, 2010. In support of this Objection, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. In recognition of the fact that the Debtors are solvent and that equity security holders should have the opportunity to play a meaningful role in these chapter 11 cases, the U.S. Trustee appointed the Equity Committee on December 22, 2009. Indeed, equity security holders appear to be the only constituency of the Debtors that stands to suffer any real loss under the Plan, having their equity interests diluted approximately 80%. The Equity Committee and its professionals have devoted substantial time in the ensuing 10-day period (over two major holidays) to requesting information from the Debtors, reviewing certain preliminary information that has been made available and negotiating confidentiality agreements with the Debtors, which have yet to even be finalized. Given the short period of time since the Equity Committee was appointed and the intervening holidays, most of the information requested has yet to be provided.

2. Although the Equity Committee has not yet had the opportunity to complete preliminary diligence, the Debtors seek to proceed with solicitation of the Plan and a confirmation hearing on February 18, 2010. Significantly, solicitation of the Plan and confirmation in February is not required under the Debtors' Plan Support Agreement with holders of the Debtors' Notes, which only requires that the Plan be confirmed by April 20, 2010.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the Motion.

Based on the information currently available to the Equity Committee, the Equity Committee believes that the Plan provides substantially more to the holders of the Notes (collectively, the "Noteholders") than necessary to pay their claims in full, making the Plan unconfirmable, and that given a short additional period of time, and access to the necessary financial and other information, the Equity Committee can likely propose a better, and confirmable, alternative to the current Plan — i.e., a plan that would provide a better recovery to equity holders and an appropriate capital structure for the Debtors.

3. Nonetheless, the Equity Committee is not, at least at this point, seeking to jeopardize the Debtors' "safety net" in the form of the Plan Support Agreement. Rather, the Equity Committee seeks only to defer the proposed confirmation hearing to mid-March to enable the Equity Committee to have a meaningful opportunity to complete diligence and propose a better, confirmable alternative to the Plan. Such a deferral is necessary to avoid irreparable harm to the equity holders of GSI because once the Debtors commence solicitation of the Plan, the Equity Committee's ability to propose an alternative plan will be irreversibly compromised.

4. As the Equity Committee understands it, the Debtors seek to proceed with solicitation and a confirmation hearing in mid-February because (a) the Debtors are generally concerned, from an operational perspective, about the length of time they are in bankruptcy and (b) the required cash payment to the Noteholders is reduced by $1 million if the Plan is confirmed by February 28, 2010. The Debtors' operational concerns with being in bankruptcy and the length of these cases — a path the Debtors chose when there was no compelling reason to do so — are all the more reason to defer confirmation of the Plan for a short period to enable the Equity Committee to play a meaningful role. Once the Debtors begin solicitation of the Plan and their various vendor and customer constituencies thus develop expectations that the Plan will

RLF1 3522293v.1

be confirmed in mid-February, the Debtors will be significantly more reluctant to consider *any* alternative that the Equity Committee presents because of alleged fears that the resulting delay of confirmation could harm their businesses. Furthermore, if the Equity Committee is thus forced to come back before the Court requesting deferral of the confirmation hearing and termination of exclusivity to propose an alternative plan, which will result in an even longer delay than if the Debtors were to agree to pursue another alternative, the Debtors undoubtedly will argue that terminating exclusivity and delaying confirmation of the Plan will substantially harm their businesses because of expectations already created among their vendors and customers. Thus, the Equity Committee believes that the failure at this stage to defer the February confirmation hearing will result in the pursuit of the Plan to the exclusion of all alternatives, and a likely contested valuation dispute at confirmation, becoming a *fait accompli*.

5. With respect to the potential reduction in the payment to the Noteholders if the Plan is confirmed by February 28, 2010, that potential benefit is only relevant if the current Plan is confirmed, and even if it were to become a lost benefit, such a benefit, which the Equity Committee believes the Noteholders offered only to stifle competing plans, does not constitute a sufficient reason to preclude the Equity Committee from having a meaningful opportunity to propose a better, and confirmable, alternative to the Plan.

6. For these reasons and the reasons set forth below, the Equity Committee opposes the Debtors' request in the Motion to proceed with solicitation and set the Confirmation Hearing for February 18, 2010 and requests that the Confirmation Hearing be deferred until mid-March. The Equity Committee does not oppose approval of the Disclosure Statement as necessary to comply with the Plan Support Agreement. The Disclosure Statement should include, however, the current position and recommendation of the Equity Committee as noted

RLF1 3522293v.1

below. In addition, the Solicitation Package should include a letter from the Equity Committee regarding its position on the Plan.

## BACKGROUND

7. On November 20, 2009 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. On the Petition Date, the Debtors filed, among other things, the Disclosure Statement, the Plan and a motion to assume the Plan Support Agreement the Debtors had entered into with holders of the Debtors' Notes.

9. On December 18, 2009, the Court entered an order authorizing the Debtors to assume the Plan Support Agreement.

10. On December 22, 2009, the United States Trustee for the District of Delaware appointed the Equity Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. The members of the Equity Committee are Stephen Bershad, Bradley Louis Radoff and JEC II Associates, LLC.

## ARGUMENT

### I. THE COURT SHOULD DEFER THE DATES FOR THE CONFIRMATION HEARING AND THE MAILING OF SOLICITATION PACKAGES

11. In the Motion, the Debtors propose that Solicitation Packages be mailed by January 11, 2010 and a Confirmation Hearing be scheduled for February 18, 2010. Those

RLF1 3522293v.1

dates should be delayed for at least four weeks to allow the Equity Committee an opportunity to complete its diligence and develop and propose an alternative plan.

12. Since the Equity Committee's appointment approximately 10 days ago, the Equity Committee has been aggressively seeking the information it needs from the Debtors and exploring possible alternatives based on the limited information it has received to date. Given the intervening holidays, however, there is still substantial information that the Equity Committee has requested but not yet received. Nonetheless, based on the information that the Equity Committee has been provided to date, the Equity Committee believes that the Plan provides Noteholders substantially more than payment in full on their claims and that there are alternatives to the Plan that (a) will provide a higher recovery to GSI's equity holders as well as an appropriate capital structure for the Debtors and (b) can be implemented without a substantial delay in these chapter 11 cases. Furthermore, although it will depend upon what information is made available and how soon it is provided, the Equity Committee may even be in a position to establish at the hearing to consider approval of the Disclosure Statement that there is a strong prospect that the Equity Committee will in fact be able to propose a superior alternative to the Plan in the near term.

13. Without seeking any input from GSI's equity holders, the Board of Directors (the "Board") of GSI decided to commence these chapter 11 cases and pursue a plan, on an extremely expedited basis, to dilute the ownership interests of GSI's equity holders by 80%. This decision is particularly troubling to equity holders given that the Debtors have not filed audited financial statements in well over a year and existing senior management and the Board, on whose watch this occurred, stand to receive releases from liability under the Plan and potentially up to 8% of the equity in the emerged entity. The Equity Committee believes that,

for several reasons, including the fact that no audited financial statements were available, the Board's pursuit of alternatives to the Plan prior to the commencement of these chapter 11 cases was insufficient to enable the Debtors to maximize their value for the benefit of all stakeholders or to establish that the Plan provides the highest and best treatment for equity holders. Moreover, capital markets have improved substantially since the Debtors first undertook their efforts to explore alternatives.

14. The Equity Committee was appointed to enable the one constituency that stands to suffer a substantial loss under the Plan — a constituency that has not had access to confidential information until a few days ago — to have a meaningful role in these chapter 11 cases. The requested four-week deferral is necessary to avoid irreparable harm to GSI's equity holders. Once the Confirmation Hearing is set for February 18, 2010 and Solicitation Packages are mailed, the Equity Committee's ability to propose an alternative plan will be irrevocably compromised. Any attempt by the Equity Committee to propose an alternative plan to the Debtors will be met with objections that consideration of the Plan is too far along to change paths and that delay will cause harm to the Debtors' businesses, including as a result of expectations already created by the February confirmation timeline.

15. The requested deferral is particularly appropriate because a large part of the reason that an alternative plan is unavailable at this time is that GSI's equity holders were not included in Plan negotiations and the Debtors could not provide equity holders with necessary public financial information due to the Debtors' historical and ongoing problems in generating current and accurate financial statements.

RLF1 3522293v.1

## II. DEFERRAL OF THE CONFIRMATION HEARING WILL NOT HARM THE DEBTORS

16. Deferring the Confirmation Hearing for four weeks will not jeopardize the Plan Support Agreement. The Plan Support Agreement only requires that the Plan be confirmed by April 20, 2010. That deadline can still be met if the Confirmation Hearing is scheduled for mid-March rather than mid-February.

17. The Equity Committee anticipates that the Debtors will oppose any such deferral of the Confirmation Hearing until March on the grounds that (a) a delay in the Confirmation Hearing beyond February 28, 2010 will cause the Debtors to lose the potential benefit of a $1 million reduction in the cash payment otherwise required to be paid to the Noteholders under the Plan and (b) the Debtors' businesses will be negatively impacted. Neither of these arguments justify the effective disenfranchisement of GSI's equity holders. As an initial matter, the $1 million reduction in the payment to Noteholders under the Plan, which the Noteholders no doubt included only as an incentive to expedite the process to stifle competing plans, is relevant only if the Plan is approved. Since the Equity Committee believes that the Plan is unconfirmable because it provides the Noteholders with value far in excess of their claims, it is not a benefit the Equity Committee believes would be obtained in any event. Moreover, even if it were to become a lost benefit, it is a small price to pay to permit the Equity Committee to participate fully and equally in the bankruptcy process. GSI's equity holders will see their ownership interests reduced by 80% under a Plan that is the result of negotiations in which the equity holders were not included. The equity holders' right, through the Equity Committee, to have a meaningful opportunity to participate in these bankruptcy cases, including proposing an alternative plan that does not unnecessarily destroy shareholder value, should not be sold off for $1 million.

RLF1 3522293v.1

18. With respect to the alleged potential damage to the Debtors' businesses caused by the continuation of these chapter 11 cases, the Debtors should have considered such potential damage before they embarked on this course of action. To permit the Debtors to rely on a problem that they unnecessarily created to silence the voices of their equity holders is unfair and unjustifiable. Moreover, if the Equity Committee is correct, the Plan is unconfirmable and the denial of confirmation of the Plan will be substantially worse for the Debtors' businesses than any delay.[3] In any event, the Debtors' concerns about their businesses is all the more reason to defer confirmation of the Plan for a short period to enable the Equity Committee to play a meaningful role. Once solicitation begins and the Debtors' vendor and customer constituencies develop expectations of confirmation in mid-February, the Debtors will be significantly more reluctant to consider any alternative that the Equity Committee presents because of alleged fears that the resulting delay of confirmation could harm their businesses. If the Equity Committee is thus forced to come back before the Court requesting deferral of the confirmation hearing and termination of exclusivity to propose an alternative plan, the Debtors undoubtedly will argue that terminating exclusivity and delaying confirmation of the Plan will substantially harm their businesses because of expectations already created among their vendors and customers. Thus, the failure at this stage to defer the February confirmation hearing will result in the pursuit of the Plan to the exclusion of other alternatives, and a likely contested valuation dispute at confirmation, becoming a foregone conclusion.

---

[3] The members of the Equity Committee collectively hold approximately 30% of the existing equity and oppose the Plan, almost certainly resulting in the equity class voting to reject the Plan and forcing the Debtors to attempt to cramdown the Plan.

## III. THE DISCLOSURE STATEMENT SHOULD INCLUDE THE POSITION AND RECOMMENDATION OF THE EQUITY COMMITTEE

19. While the Equity Committee opposes the Debtors commencing with solicitation of the Plan on January 11 and scheduling the Confirmation Hearing on February 18, the Equity Committee recognizes that the Debtors are required to obtain an order approving the Disclosure Statement by January 10, 2010 under the Plan Support Agreement. A disclosure statement may be approved only if it contains "adequate information," which is defined in the Bankruptcy Code as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a). The determination of whether the information provided is adequate is committed to the bankruptcy court's discretion. In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995) ("Under § 1125(a), the Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement . . . ."). Although adequacy is determined under a subjective standard, In re Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988), the express language of the statute requires sufficient information to allow a creditor or interest holder "to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

20. To meet these standards, and assuming the Court is inclined to approve the Disclosure Statement to avoid any potential termination of the Plan Support Agreement, the Disclosure Statement should be modified to inform equity holders that the Equity Committee has been appointed and provide contact information for the members of the Equity Committee and its advisors and professionals. GSI's equity holders need to know that the Equity Committee has been appointed to represent their interests and they need to be provided with contact information

-10-

RLF1 3522293v.1

so that they can, if they desire, communicate with their representatives at this critical juncture in the bankruptcy case. That need is particularly acute where, as here, the Debtors are moving the case along at an accelerated rate and the Equity Committee opposes the Plan.

21. The Disclosure Statement should also be modified to inform GSI's equity holders of the Equity Committee's position regarding the Plan and recommendation to vote to reject the Plan. The Equity Committee proposes that the following language be included in the Disclosure Statement:

- Add the following as paragraph 4 on page 1:

  On December 22, 2009, the US Trustee appointed an official committee of equity security holders (the "Equity Committee") to represent the interests of holders of equity interests in these chapter 11 cases. Based on the diligence that the Equity Committee has done to date, the Equity Committee does not believe that the Plan is in the best interests of equity security holders and recommends that holders of equity interests vote to reject the Plan. The Equity Committee believes that there are alternatives to the Plan that would provide for a higher recovery to holders of equity interests and is currently pursuing those alternatives. The Equity Committee further believes that the Plan is not confirmable if equity holders vote to reject the Plan because the Equity Committee believes that, based on the value of the equity interests and new notes that will be distributed under the Plan to holders of the Debtors' existing Senior Notes, the holders of the Senior Notes will receive substantially more than full recovery on their claims, resulting in an unfair and inappropriate dilution of recoveries to holders of equity interests. The Equity Committee anticipates being in a position in the coming weeks to propose to the Debtors an alternative to the Plan that would provide for a better recovery to holders of equity interests while also ensuring an appropriate capital structure for the Debtors and addressing the Debtors' concerns regarding the length of these chapter 11 cases. To the extent that the Debtors do not support such an alternative, the Equity Committee may seek approval from the Bankruptcy Court to propose and solicit its own plan of reorganization.

- Add the following as first full paragraph on page 27 preceding the paragraph beginning "Following negotiations between the Debtors . . . ":

    For a variety of reasons, the Equity Committee believes that the process the Debtors undertook to identify possible alternatives to the transactions negotiated with the holders of Senior Notes was insufficient to enable the Debtors to maximize their value or to establish that the Plan provides the highest and best treatment for equity holders.

- Add the following as a second full paragraph after the heading "**C. Cramdown.**":

    Based on the information available to the Equity Committee and its diligence to date, if holders of equity interests vote to reject the Plan, the Equity Committee believes that the Debtors cannot meet the "cramdown" requirements to confirm the Plan. In particular, the Equity Committee believes that the holders of the Senior Notes are receiving under the Plan payments and property with an aggregate value substantially greater than necessary to pay all such holders the full amount of their allowed claims.

## IV. THE SOLICITATION PACKAGE SHOULD INCLUDE A LETTER FROM THE EQUITY COMMITTEE

22. Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and interests upon approval of a disclosure statement. Such materials include the plan, the disclosure statement, notice of the voting deadline and "any other information as the court may direct." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3017(d) "provides for much discretion as to what other information the court may deem appropriate to send out with the disclosure statement." In re Tenn-Fla Partners, Case No. 92-27624-B, 1993 WL 151346, at*1 (Bankr. W.D. Tenn. Apr. 29, 1993). Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."

RLF1 3522293v.1

23. In addition to the changes in the Disclosure Statement requested above, the Equity Committee requests that the Court modify the order approving the Disclosure Statement to require the Debtors to include in the Solicitation Package a letter from the Equity Committee to its constituents explaining the Equity Committee's recommendation to vote to reject the Plan. Although the Disclosure Statement itself should include the Equity Committee's position as noted above, the letter is appropriate because not all equity holders will read through the 100+ pages of the Disclosure Statement. It is imperative that GSI's equity holders, many of whom may be unaware that an Equity Committee has even been appointed, understand the Equity Committee's opposition to the Plan.

WHEREFORE, for the foregoing reasons, the Equity Committee respectfully requests that the Court (i) defer the Confirmation Hearing and the dissemination of the Solicitation Package for four weeks to provide the Equity Committee a meaningful opportunity to present an alternative plan and (ii) require the Debtors to modify the Disclosure Statement as set forth herein. Alternatively, to the extent the Court authorizes the Debtors to mail the Solicitation Packages, the Equity Committee requests that the Court require the Debtors to include in the Solicitation Package a letter from the Equity Committee.

Dated: January 4, 2010
      Wilmington, Delaware

Respectfully submitted,

/s/ Paul N. Heath

Robert J. Stearn, Jr. (No. 2915)
Paul N. Heath (No. 3704)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Robert S. Faxon (Admitted Pro Hac Vice)
Carl E. Black (Admitted Pro Hac Vice)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Daniel P. Winikka (Admitted Pro Hac Vice)
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

PROPOSED ATTORNEYS FOR COMMITTEE
OF EQUITY SECURITY HOLDERS