# EXHIBIT "A"

## GLOSSARY OF DEFINED TERMS

1. "Administrative Claim"  means a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Fee Claims.

2. "Affiliate"  means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

3. "Allowed"  when used with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim;

   (a) with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 4.2(c) of this Plan; and

   (b) with respect to Equity Interests in any Debtor, means (i) the Equity Interests in any Debtor (except Holdings) as reflected in the stock transfer ledger or similar register of such Debtor as of the Effective Date; and (ii) with respect to Holdings, the issued and outstanding common shares in Holdings as reflected in the stock transfer ledger as of the Effective Date

4. "Assets"  means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

5. "Avoidance Actions"  means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code.

1

588621.1 1/11/10

| 6. | "Bankruptcy Code" | means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases. |
|---|---|---|
| 7. | "Bankruptcy Court" | means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases. |
| 8. | "Bankruptcy Rules" | means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases. |
| 9. | "Bar Date Notice" | means the Notice of Establishment of Bar Date for Filing Proofs of Claim Against the Estates, as approved by the Bar Date Order. |
| 10. | "Bar Date Order" | means the Order Pursuant to Bankruptcy Rule 3003(c) (i) Establishing a Bar Date for Filing Certain Proofs of Claim; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Proof of Claim Form and Notice of Bar Date; and (iv) Approving Notice and Publication Procedures. |
| 11. | "Business Day" | means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York. |
| 12. | "Cash" | means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America. |
| 13. | "Cash Note Payment" | means, the result of (A) the aggregate amount of (i) $2.1 million *plus* (ii) $69,315 for each day following the Petition Date until the (x) Confirmation Date, if as of the date that is eleven (11) days after the Confirmation Date the Confirmation Order is not a Final Order and the Required Noteholders have not, as of such date, waived the condition set forth in Section 9.2(a) hereof, or (y) the Effective Date, if the Confirmation Order is a Final Order on the date that is eleven (11) days after the Confirmation Date; *minus* (B) the sum of (i) $2.1 million if the Petition |

|     |                        |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                     |
| --- | ---------------------- | --- |
|     |                        | Date is on or before November 20, 2009, and (ii) an additional $1 million if the Confirmation Date is within 100 days of the Petition Date. |
| 14. | "Causes of Action"     | means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise. |
| 15. | "Chapter 11 Cases"     | means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors. |
| 16. | "Claim"                | means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. |
| 17. | "Claims Agent"         | means the entity designated by order of the Bankruptcy Court to process proofs of claim. |
| 18. | "Committee"            | means any official committee appointed in the Chapter 11 Cases. |
| 19. | "Confirmation Date"    | means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court. |
| 20. | "Confirmation Hearing" | means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan. |
| 21. | "Confirmation Order"   | means the order of the Bankruptcy Court confirming the Plan. |

| | | |
|---|---|---|
| 22. | "Contested" | (a) when used with respect to a Claim, means such Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (ii) if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; or (iv) as to which an objection has been filed on or before the Effective Date; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and<br><br>(b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer register as of the Effective Date or if at such time there is an objection pending to the allowance thereof. |
| 23. | "Debtor" | means any of Holdings and its direct and indirect Subsidiaries that are debtors in the Chapter 11 Cases, including GSI and MES. |
| 24. | "Disallowed" | when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order. |
| 25. | "Disbursing Agent" | means Reorganized Holdings or any agent selected by Reorganized Holdings, acting on behalf of the Debtors in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing |

4

| | | |
|---|---|---|
| | | any other act or task that is or may be delegated to the Disbursing Agent under the Plan. |
| 26. | "Disclosure Statement Order" | means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan. |
| 27. | "Disclosure Statement" | means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto. |
| 28. | "Effective Date" | means a date selected by the Debtors which shall be a Business Day that is no later than ten (10) Business Days after all of the conditions specified in Section 9.2 have been satisfied or waived (to the extent waivable). |
| 29. | "Equity Interest" | means any outstanding ownership interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, warrants, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in any of the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation. |
| 30. | "Estate" | means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases. |
| 31. | "Exchange Act" | Means the Securities Exchange Act of 1934, as amended and the rules and regulations of the Security and Exchange Commission promulgated thereunder. |
| 32. | "Face Amount Minimum" | shall have the meaning ascribed to it in Section 7.8(b). |
| 33. | "Fee Application" | means an application for allowance and payment of a Fee Claim (including any Claims for "substantial contribution" pursuant to section 503(b) of the Bankruptcy Code). |

5

| | | |
|---|---|---|
| 34. | "Fee Claim" | means a Claim of a Professional Person. |
| 35. | "Final Order" | means an order or judgment entered by the Bankruptcy Court or any other court of competent jurisdiction that has not been amended, modified or reversed, and as to which (a) no stay is in effect, (b) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired and (c) no appeal, request for stay, petition seeking certiorari or other review is pending. |
| 36. | "General Unsecured Claims" | means any Claim against a Debtor other than an Administrative Claim, a Tax Claim, a Priority Claim, a Secured Claim, an Intercompany Claim or a Note Claim. |
| 37. | "GSI" | means GSI Group Corporation, a Michigan corporation |
| 38. | "GSI Limited Holdings" | means GSI Limited Holdings Corporation, a company organized under the laws of the Province of New Brunswick, Canada, and direct wholly-owned subsidiary of Holdings. |
| 39. | "GSI Limited Holdings II" | means GSI Limited Holdings II Corporation, a company organized under the laws of the Province of New Brunswick, Canada, and direct wholly-owned subsidiary of GSI Limited Holdings. |
| 40. | "GSI UK" | means GSI Group Limited, a company organized under the laws of England and Wales and a wholly owned Subsidiary of Holdings, which upon the Effective Date shall become a wholly owned subsidiary of GSI Limited Holdings II. |
| 41. | "GSI UK Note" | means the 12.94% promissory note issued by GSI to GSI UK dated as of July 25, 2008 in the amount of GBP12,500,000. |
| 42. | "GSI UK Note Claim" | means the Claim against a Debtor arising pursuant to the GSI UK Note. |
| 43. | "GSI UK Shares" | means all of the issued and outstanding shares of capital stock of GSI UK. |

588621.1 1/11/10

| 44. | "Guarantee Claim" | means a Claim against a Debtor arising pursuant to a guarantee of the obligations of any Obligor Debtor valid under applicable law. |
| --- | --- | --- |
| 45. | "Guarantor Debtor" | means a Debtor that has guaranteed the obligations of any Obligor Debtor. |
| 46. | "Holdings Common Shares" | means common shares of Holdings, no par value. |
| 47. | "Holdings Equity Interest" | means an Equity Interest in Holdings, other than any such Equity Interest that is unexercised or unvested as of the Voting Record Date, but including treasury stock and all options, warrants, calls, rights, participation rights, puts, awards, commitments, Rights (including any Right not yet exercisable pursuant to the Shareholder Rights Plan) or any other agreements of any character to acquire such Equity Interest and shall also include any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code arising from the rescission of a purchase or sale of any Equity Interest or rights relating to any Equity Interest, or any Claim for damages arising from the purchase or sale of any Equity Interest, including, in each case, common shares of Holdings or any Claim for reimbursement, contribution, or indemnification arising from or relating to any such Claims. |
| 48. | "Holdings" | means GSI Group Inc., a company continuing to be organized under the laws of the Province of New Brunswick, Canada. |
| 49. | "Implementation Order" | means a Final Order, in form and substance satisfactory to the Debtors, which provides the terms and provisions set forth in Section 9.1(a). |
| 50. | "Indenture Trustee" | means the indenture trustee under the New Indenture |
| 51. | "Insured Claim" | means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors. |
| 52. | "Integral Multiples" | shall have the meaning ascribed to it in Section 7.8(b). |

7

| | | |
|---|---|---|
| 53. | "Intercompany Claim" | means a Claim held by any Debtor against any other Debtor based on any fact, action, omission, occurrence or thing that occurred or came into existence prior to the Petition Date. For avoidance of doubt, any Claim by a Debtor for subrogation pursuant to Section 13.4, and the Allowed GSI UK Note Claim shall not be deemed an Intercompany Claim for purposes of Plan Distributions or otherwise under this Plan. |
| 54. | "Internal Revenue Code" | means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS. |
| 55. | "IRS" | means the United States Internal Revenue Service. |
| 56. | "MES" | means MES International, Inc., a Delaware corporation and a wholly owned subsidiary of MicroE Systems, Inc., a wholly owned subsidiary of GSI. |
| 57. | "New $1.10 Warrants | means warrants for a number of New Common Shares equal to 10% of 110% of the Outstanding Capital Stock of Reorganized Holdings. The New $1.10 Warrants shall be substantially in the form filed with the Bankruptcy Court as a Plan Document. |
| 58. | "New $2.00 Warrants | means warrants for a number of New Common Shares equal to 10% of 110% of the Outstanding Capital Stock of Reorganized Holdings. The New $2.00 Warrants shall be substantially in the form filed with the Bankruptcy Court as a Plan Document. |
| 59. | "New Common Shares" | means common shares of Reorganized Holdings. |
| 60. | "New Indenture" | means the Indenture to be dated on or about the Effective Date and to be entered into between Reorganized GSI, as Issuer, Reorganized Holdings and each of the Subsidiary Guarantors, as guarantors and The Bank of New York Mellon Trust Company, N.A. as trustee, providing for the issuance of New Senior Secured Notes. The New Indenture shall be substantially in the form filed with the Bankruptcy Court as a Plan Document. |

588621.1 1/11/10

| 61. | "New Senior Secured Notes" | means new senior secured notes of Reorganized GSI in the form attached to the New Indenture to be issued on or about the Effective Date in a principal amount of $104,100,000. The New Senior Secured Notes shall mature January 15, 2014 and have a coupon of 12.25% if paid in cash or 13.00% if paid in kind. The New Senior Secured Notes and the New Indenture shall be substantially in the form filed with the Bankruptcy Court as a Plan Document. |
| --- | --- | --- |
| 62. | "New Warrants" | means the New $1.10 Warrants and the New $2.00 Warrants. |
| 63. | "Note Claims" | means the Senior Note Claims and the GSI UK Note Claims. |
| 64. | "Noteholders" | means the holders of the Senior Notes. |
| 65. | "Notice of Confirmation" | means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests. |
| 66. | "Objection Deadline" | means the deadline for filing objections to Claims as set forth in Section 8.1 of the Plan. |
| 67. | "Obligor Debtor" | means any Debtor that is the primary obligor of any obligations guaranteed by another Debtor. |
| 68. | "Outstanding Capital Stock of Reorganized Holdings" | means the total number of New Common Shares issued pursuant to this Plan but excluding issuances upon exercise of the New Warrants and in connection with any management incentive plan. |
| 69. | "Person" | means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity. |
| 70. | "Petition Date" | means, with respect to any Debtor, the date on which the Chapter 11 Case of such Debtor was commenced. |
| 71. | "Plan Distribution Date" | means (a) with respect to any Claim, (i) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim, or (ii) a date that is as soon as reasonably practicable after the date such Claim |

becomes Allowed, if not Allowed on the Effective Date, and (b) with respect to any Equity Interest, the Effective Date or a date that is as soon as reasonably practicable after the Effective Date.

| 72. | "Plan Distribution" | means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim or Allowed Equity Interest. |
| --- | --- | --- |
| 73. | "Plan Documents" | means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan including, without limitation those listed on Exhibit B hereto. |
| 74. | "Plan Supplement" | means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan or the treatment of the Allowed Claims and Equity Interest thereunder (including without limitation the Plan Documents). |
| 75. | "Plan Support Agreement" | means that certain plan support agreement, by and among the Debtor, and the Noteholders. The Plan Support Agreement will be filed with the Bankruptcy Court as a Plan Document. |
| 76. | "Plan" | means this chapter 11 plan, either in its present form or as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative. |
| 77. | "Post-Effective Date Fully Diluted Capital Stock of Reorganized Holdings" | means the total number of New Common Shares issued pursuant to this Plan and all New Common Shares issuable upon the exercise of the New Warrants and all New Common Shares issuable in connection with any management incentive plan. |
| 78. | "Post-Confirmation Interest" | means simple interest on an Allowed Claim at the rate payable on federal judgments as of the Effective Date or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Plan Distribution Date applicable to a Claim to the date of actual payment with respect to such Claim. |

79. "Post-Petition Interest" means with respect to:

(a) Secured Claims, unpaid interest accruing on such claims from the Petition Date through the Effective Date at the non-default rate set forth in the contract or other applicable document giving rise to such claims;

(b) Tax Claims, interest at the non-penalty rate set forth in the applicable state or federal law governing such Claims from the Petition Date through the Effective Date;

(c) Priority Claims and General Unsecured Claims, interest from the Petition Date through the Effective Date at

(i) the non-default rate set forth in the contract or other applicable document giving rise to such claims, or

(ii) such interest, if any, as otherwise agreed to by the holder of such Claim and the applicable Debtor, or

(iii) any other applicable rate of interest required to unimpair such Claim, as may be determined by the Bankruptcy Court; and

(d) Claims other than as listed in (a) through (c) herein, interest at 0%.

Notwithstanding the foregoing, Post-Petition Interest as it relates to a particular Allowed Claim shall (i) be considered to be $0.00 for distribution purposes under Article III or Article IV if the amount of relevant Allowed Claim already includes Post-Petition Interest so as to avoid a duplicate distribution of Post-Petition Interest, (ii) be reduced by the amount of Post-Petition Interest paid on such Claim during the pendency of the Chapter 11 Cases so as to avoid a duplicate distribution of Post-Petition Interest and (iii) only include interest accruing on such Claim through the earlier of the Effective Date or the date payment was made in the event payment on a Claim was made prior to the Effective Date.

80. "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of

11

| | | |
|---|---|---|
| | | the Bankruptcy Code, other than Secured Claims, Administrative Claims, and Tax Claims. |
| 81. | "Pro Rata Share" | means the proportion that an Allowed Claim or Equity Interest bears to the aggregate amount of all Claims or Equity Interests in a particular class, including Contested Claims or Equity Interests, but excluding Disallowed Claims, (a) as calculated by the Disbursing Agent; or (b) as determined or estimated by the Bankruptcy Court. |
| 82. | "Professional Person" | means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case. |
| 83. | "Registration Rights Agreement" | means a Registration Rights Agreement by and between Reorganized Holdings and the holder of the GSI UK Note Claim, pursuant to which such holders would have the right to require Reorganized Holdings to effect registered secondary offerings of such holders' New Common Shares on terms and conditions to be negotiated and reflected in such Registration Rights Agreement, provided there shall be no more than two demand registration rights. The Registration Rights Agreement will be filed with the Bankruptcy Court as a Plan Document. |
| 84. | "Released Parties" | means, collectively, (a) the Debtors, the Reorganized GSI Entities, (b) each Noteholder, in its capacity as such, (c) each indenture trustee under the Senior Notes Indenture, and (d) with respect to each of the foregoing entities in clauses (a) through (c), such person's current and former affiliates, predecessors, successors in interest, parent entities, subsidiaries, attorneys, accountants, officers, partners, managers, directors, principals, members, equity holders, partners, employees, agents, investment bankers, auditors, restructuring and other consultants, financial advisors (including any firm that provided fairness opinions or similar advice to the Debtors or their boards of directors as to the transactions effectuated by this Plan) and other professionals, in each case in their capacity as such. |

| | | |
|---|---|---|
| 85. | "Required Noteholders" | has the meaning set forth in the Plan Support Agreement. |
| 86. | "Reorganized GSI Entities" | means Reorganized Holdings, together with its affiliated Debtors as reorganized. |
| 87. | "Reorganized GSI" | means GSI, on or after the Effective Date, and as renamed Excel Technology Corporation as of or about the Effective Date. |
| 88. | "Reorganized Holdings" | means Holdings, on or after the Effective Date, to be renamed Excel Technology, Inc. as of the Effective Date. |
| 89. | "Reorganized Holdings Constituent Documents" | means the articles of reorganization of Reorganized Holdings and each of its affiliated Debtors, as amended or amended and restated as of the Effective Date, among other things, to (a) prohibit the issuance of non-voting equity securities by such Debtor as required by section 1123(a)(6) of the Bankruptcy Code, and (b) otherwise give effect to the provisions of this Plan. The Reorganized Holdings Constituent Documents shall be in substantially the form filed with the Bankruptcy Court as Plan Documents. |
| 90. | "Reorganized MES" | means MES, on or after the Effective Date. |
| 91. | "Rights" | means the rights issued under the Shareholder Rights Plan. |
| 92. | "Schedules" | means the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1009. |
| 93. | "Secured Claim" | means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment |

13

of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

| | | |
|---|---|---|
| 94. | "Securities Act" | means the Securities Act of 1933, as amended and the rules and regulations of the Security and Exchange Commission promulgated thereunder. |
| 95. | "Securities Class Action" | means that certain putative shareholder class action entitled *Wiltold Trzeciakowski, Individually and on behalf of all others similarly situated v. GSI Group Inc., Sergio Edelstein, and Robert Bowen*, Case No. 08-cv-12065 (GAO), filed on December 12, 2008, in the United States District Court for the District of Massachusetts in connection with the delayed filing of its results for the quarter ended September 26, 2008, and the announcement of a review of revenue transactions, alleging federal securities violations against Holdings and certain of Holdings' current and former officers and directors. |
| 96. | "Security Agreement" | means the Security Agreement to be executed and delivered by Reorganized Holdings, Reorganized GSI and each Subsidiary Guarantor, substantially in the form attached to the New Indenture and filed as a Plan Document. |
| 97. | "Security Documents" | means (a) the Security Agreement, (b) all other security agreements, pledge agreements, collateral assignments, mortgages, deeds of trust, control agreements or other grants or transfer of security, creating (or purporting to create) a lien upon the collateral as contemplated by the New Indenture and the Security Agreement, (c) fee mortgages, title |

14

policies and other real estate-related documentation customarily requested by secured lenders lending directly against real estate assets and as may be reasonably requested by the Required Noteholders, (d) leasehold mortgages (as reasonably requested by the Required Noteholders and which Reorganized Holdings shall use commercially reasonable efforts to obtain) or, if determined by the Required Noteholders in lieu of one or more leasehold mortgages, landlord waivers, which Reorganized Holdings shall use commercially reasonable efforts to obtain, in each case in form and substance reasonably acceptable to the Required Noteholders, and (e) "Phase I" environmental reports on real estate owned by Reorganized Holdings, Reorganized GSI and the Subsidiary Guarantors as reasonably requested by the Required Noteholders, provided any favorable or unfavorable results of such a report shall not be a condition precedent to the issuance of the New Senior Secured Notes. or to the occurrence to the Effective Date pursuant to Section 9.2 hereof.

| | | |
|---|---|---|
| 98. | "Senior Note Claim" | each Claim of a Noteholder against Holdings and GSI and/or any Guarantee Claim with respect to the Senior Notes arising under or evidenced by the Senior Notes or the Indenture for the Senior Notes and related documents. Each Noteholder shall have a single Senior Note Claim on account of each Senior Note, which Claim shall encompass and include all Guarantee Claims as to such Senior Note. |
| 99. | "Senior Notes" | Means those certain 11% Senior Subordinated Notes due 2013 issued by GSI and guaranteed by Holdings and certain Subsidiaries, governed by the Senior Note Indenture. |
| 100. | "Senior Notes Indenture" | means that certain Indenture dated August 20, 2008 as such Indenture has been supplemented by the First Supplemental Indenture, dated as of August 25, 2008 and the Second Supplemental Indenture, dated as of March 5, 2009. |

| | | |
|---|---|---|
| 101. | "Shareholder Rights Plan" | means that certain Shareholder rights Plan, dated April 22, 2005, by and between Holdings and Computershare Trust Company of Canada, as Rights Agent. |
| 102. | "Subordinated Claim" | means a Claim (other than a Note Claim) against any Debtor subordinated by a Final Order. |
| 103. | "Subsidiary" | means any entity of which Holdings owns directly or indirectly more than fifty percent (50%) of the outstanding capital stock or membership interests. |
| 104. | "Subsidiary Guarantors" | means, collectively, Cambridge Technology, Inc., Continuum Electro-Optics, Inc., Control Laser Corp. (d/b/a Baublys Control Laser), Excel Technology, Inc. (as it may be renamed as of or about the Effective Date), MicorSystems Corp, Reorganized MES, The Optical Corp., Photo Research, Inc., Quantronix Corp. and Synrad, Inc. |
| 105. | "Tax Claim" | means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code. |
| 106. | "Voting Record Date" | means the record date for voting on the Plan established by order of the Bankruptcy Court. |

588621.1 1/11/10