# **EXHIBIT B**

## Engagement Letter

As of December 23, 2009

**Official Committee of Equity Holders
of GSI Group Inc.**
c/o Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114

Attention:    Stephen Bershad
                Chairman

Re: <u>Advisory Services</u>

      This agreement (the "<u>Agreement</u>") confirms that Jefferies & Company, Inc. ("<u>Jefferies</u>") has been engaged by the Official Committee of Equity Holders (the "Committee"), appointed in the bankruptcy cases (the "<u>Cases</u>") of GSI Group, Inc. ("<u>GSI</u>"), and its debtor affiliates and their respective estates (collectively, the "<u>Debtors</u>"), which are now pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") to act as set forth herein.

1.    <u>Services</u>. During the term of this engagement, and as mutually agreed upon by Jefferies and the Committee and as appropriate, Jefferies, acting as financial advisor to the Committee, will perform the following financial advisory services, among others, in connection with the Cases:

    (a)    becoming familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, properties, financial condition and prospects of the Debtors;

    (b)    providing advice and assistance to the Committee in connection with analyzing, structuring, negotiating and effecting, and identifying potential investors in, any financing transaction on behalf of the Committee pursuant to a rights offering or other financing involving public or private securities or bank debt (whether in the form of debt, equity or equity-linked securities), or any other similar transaction or series of transactions or any combination thereof, and acting, at the request of the Committee, as placement agent or underwriter for the Debtors with respect to any such financing (any such transaction considered in this paragraph is hereinafter referred to as a "<u>Capital Raise</u>"), with, if necessary, appropriate amendments made to this Agreement to reflect Jefferies' services with respect to a Capital Raise;

    (c)    advising the Committee on the current state of the "restructuring market";

    (d)    assisting and advising the Committee in examining and analyzing any strategy, potential or proposed restructuring, amending, redeeming or otherwise adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, any sale of securities or assets, including under section 363 of the United States

Bankruptcy Code (the "Bankruptcy Code"), a liquidation, or otherwise (a "Restructuring", and a Restructuring a Capital Raise, each and together, a "Transaction"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring;

(e) assisting and advising the Committee in evaluating and analyzing the proposed implementation of any Transaction, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction;

(f) assisting and advising the Committee in evaluating potential financing transactions by the Debtors;

(g) assisting and advising the Committee on tactics and strategies for negotiating with other stakeholders;

(h) attending meetings of the Committee with respect to matters on which Jefferies has been engaged to advise the Committee hereunder;

(i) providing testimony, as necessary and appropriate, with respect to matters on which Jefferies has been engaged to advise the Committee hereunder, in any proceeding before the Bankruptcy Court; and

(j) rendering such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2. Cooperation.

(a) The Committee shall furnish or use its commercially reasonable efforts to cause the Debtors to furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Debtors, which the Committee and/or the Debtors believe are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information"). In addition, the Committee shall use its commercially reasonable efforts to cause the Debtors to provide Jefferies full access, as requested, to the Debtors' officers, directors, employees and professional advisors. The Committee agrees to promptly advise Jefferies of all developments known to the Committee materially affecting the Committee, the Debtors, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Committee or the Debtors, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof.

(b) The Committee further acknowledge that Jefferies (i) will be relying on information and data provided by the Committee and/or the Debtors and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Debtors.

3. Use of Name, Advice, Opinion, etc.

(a) No advice provided by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent (not to be unreasonably withheld). In addition, the Committee agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.

(b) Jefferies' advice is solely for the use and information of the Committee, and, where appropriate, the Bankruptcy Court, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4. Compensation. In payment for services rendered and to be rendered by Jefferies hereunder, the Committee agrees to request authorization from the Bankruptcy Court to cause the Debtors to, subject to further approval by the Bankruptcy Court pay Jefferies the following:

(a) A monthly fee (the "Monthly Fee") equal to $150,000 per month until the expiration or termination of this Agreement. The first Monthly Fee(s) shall be payable immediately upon Bankruptcy Court approval of this Agreement (with, for the avoidance of doubt, the Monthly Fees being deemed to have accrued beginning on the date of this Agreement), and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary thereafter.

(b) A fee of $1.25 million, which shall be earned in full upon (i) consummation of a chapter 11 plan of reorganization, liquidation or otherwise in these Cases or (ii) the sale of substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code (whether in one transaction or series of related or unrelated transactions) (the "363 Sale"), in each case that is confirmed by the Bankruptcy Court and in which a majority of the members of the Committee, as of the date of confirmation of a chapter 11 plan or approval of other transaction or order implementing the Restructuring or the 363 Sale, have not filed an objection that was not subsequently withdrawn.

(c) Upon the consummation of a Capital Raise of new capital for which Jefferies has acted as underwriter or placement agent or for which Jefferies, at the request of the Committee, has provided advice and assistance to the Committee or the Debtors in connection with structuring, negotiating or effecting, or identifying potential investors in, a fee in an amount equal to: (i) 1.5% of the aggregate gross proceeds raised in excess of $50 million from any equity or equity-linked securities placed or purchased pursuant to a rights offering to the common

equity holders of GSI; plus (ii) 5.0% of the aggregate gross proceeds raised from any equity or equity-linked securities for which a fee is not paid pursuant to clause (i) above (other than because of the $50 million threshold); plus (iii) 1.5% of the greater of the maximum amount available under, or the aggregate principal amount of any debt raised with, a first lien on existing assets; plus (iv) 2.5% of the greater of the maximum amount available under, or the aggregate principal amount of any debt raised with, a second lien on existing assets; plus (v) 3.5% of the greater of the maximum amount available under, or the aggregate principal amount of, any other debt raised by the Debtors for which a fee is not paid pursuant to clauses (iii) or (iv) above, including, but not limited to, high-yield notes, mezzanine notes or term loans.

(d) The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring and capital markets, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring and capital markets generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Committee further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Committee in connection with any Transaction and that the value to the Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5. Expenses. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Committee will use its commercially reasonable efforts to cause the proposed order submitted to the Bankruptcy Court seeking approval of Jefferies' retention (the "Proposed Order") to require the Debtors to reimburse Jefferies, promptly upon receipt of an invoice thereof, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, and the reasonable fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6. Indemnification, etc. As further consideration under this Agreement, the Proposed Order will provide that the Debtors and their estates shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement. Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7. <u>Termination</u>. Jefferies' engagement hereunder will commence upon the execution of this Agreement by both parties, and will continue until the earlier of the date on which (A) each of the Cases is either (i) dismissed or (ii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and declared effective by the plan proponent, (B) Jefferies' services hereunder are terminated by either Jefferies or the Committee on thirty business days' written notice to the other. Upon any termination of this Agreement, the Debtors shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event of any termination of this Agreement, Jefferies shall be entitled to the applicable fee set forth in Section 4 if a Transaction is consummated on or prior to that date that is nine months from the effective date of termination of this Agreement if such Transaction would have triggered such payment had this agreement not been terminated. Any such fee shall be paid as set forth in Section 4. Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-16, and Schedule A, which shall survive such termination.

8. <u>Client Relationship</u>. During the term of the Agreement, the Committee agrees that it will not engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies. Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9. <u>Bankruptcy Court Approval</u>. The Committee shall use its commercially reasonable efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the Bankruptcy Court. Such approval shall provide for the retention of Jefferies effective December 23, 2009, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in <u>Schedule A</u>), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and <u>Schedule A</u> hereto) shall be null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order. Notwithstanding any other provision of this Agreement, Jefferies acknowledges that all payments required to be made hereunder are subject to further Bankruptcy Court approval.

10. <u>Other Transactions; Disclaimer</u>.

(a) Jefferies' parent, Jefferies Group, Inc. (collectively with its subsidiaries and affiliates, the "<u>Jefferies Group</u>") is a full service financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and research and brokerage activities) from which conflicting interests,

or duties, may arise. Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Debtors or the Committee or utilize for the Debtors' or the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws in connection with such activities. Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. The Jefferies Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b) The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Debtors or the Committee. The Committee acknowledges that Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. The Committee also acknowledges that it has consulted with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and Jefferies and its affiliates shall have not responsibility or liability with respect thereto. The Committee agrees that it is capable of evaluating the merits and risks of the transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of the transactions and such fees. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors and the Committee will be able to implement or consummate any Transaction, or any other transaction contemplated herein, or achieve any other result.

11. Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

12. Disputes.

(a) The parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "Claim") shall be submitted to the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), for final resolution. The Bankruptcy Court shall decide the merits of each Claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law. The award in the Bankruptcy Court shall be final and binding.

(b) If the Bankruptcy Court declines jurisdiction over any such matter, each party consents specifically to the exclusive jurisdiction of the federal courts of the United States sitting in the Southern District of New York, or if such federal court declines to exercise jurisdiction over any action filed pursuant to this Agreement, the courts of the State of New York sitting in the County of New York, and any court to which an appeal may be taken in connection with any action filed pursuant to this Agreement, for the purposes of all legal proceedings arising out of or relating to this Agreement. In connection with the foregoing consent, each party irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the court's exercise of personal jurisdiction over such party or the laying of venue of any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum. In the event of any litigation relating to this Agreement, the prevailing party in such litigation shall be entitled to have its reasonable fees and expenses of counsel paid by the non-prevailing party. The parties irrevocably agree to waive any right to trial by jury in any action, proceeding, claim or counterclaim (whether based upon contract, tort or otherwise) brought by or on behalf of any party related to or arising out of this engagement letter or the performance of the services hereunder. Each party further consents that service of process may be effected in any manner permitted under the laws of the State of New York.

13. Payments. All payments to be made to Jefferies hereunder shall be the joint and several liabilities of each of the Debtors in the Cases (unless otherwise agreed to by Jefferies in its sole discretion) and shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. No individual Committee member shall be liable for any fee or expense to Jefferies under this agreement. The Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14. Announcements, etc. The Committee agrees that Jefferies may, following the announcement of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction. Any press release issued announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in the Transaction.

15. Notices. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

16. Miscellaneous. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Committee and Jefferies and no other person shall acquire or have any rights under or by virtue of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Committee and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

17. Patriot Act. Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot "), it is required to obtain, verify and record information that identifies the Debtors, the Committee, and the Committee's members in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
Name: TERO JÄNNE
Title: MANAGING DIRECTOR

Accepted and Agreed:

**OFFICIAL COMMITTEE OF EQUITY HOLDERS OF
GSI GROUP INC.**, *et al.*

By _____
   Stephen Bershad
   Chairman

Official Committee of Equity Holders of GSI Group Inc., et al.
Page 9

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
    Name:
    Title:

Accepted and Agreed:

**OFFICIAL COMMITTEE OF EQUITY HOLDERS OF GSI GROUP INC.**, *et al.*

By _____
    Stephen Bershad
    Chairman

## SCHEDULE A

Reference is made to the engagement letter attached hereto between Jefferies & Company, Inc. ("Jefferies"), the Committee and the Debtors (each as defined therein) (as amended from time to time in accordance with the terms thereof, the "Agreement"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A are joint and several, and shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any trustee appointed in the Debtors' Cases.

As further consideration under the Agreement, each of the Debtors and their estates will indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies and to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors or the Committee).

No Indemnified Person shall have any liability to the Debtors or the Committee (or any member thereof) or their respective owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors or the Committee).

The Debtors will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason other than as a result of Jefferies' gross negligence or willful misconduct, then the Debtors will contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Committee or the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Committee or the Debtors on the one hand and Jefferies on the other, but also the relative fault of the Committee or the Debtors and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Committee or the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors will reimburse the Indemnified Persons for all expenses (including, without limitation, reasonable fees and expenses of counsel), including all costs and expenses (including reasonable expenses of counsel) incurred by an Indemnified Person to enforce the terms of this Schedule A, as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors, the

Committee (or any member thereof), or the Debtors' affiliates, officers, managers, directors or employees, in each case where Jefferies is no longer being paid Monthly Fees in accordance with subsection 4(a) of the Agreement, the Debtors will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance. In addition, the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.